IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARION OSHEROVITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>MYLIFE.COM, INC.,<br><br>Defendants. | Civil Case Number:<br><br>CIVIL ACTION<br><br>CLASS ACTION COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. This is a case about an online company that recklessly reports information about millions of everyday Americans, without any regard for the accuracy of the reported information, all in an effort to extort people to pay fees to have the company 'correct' its inaccurate reporting. In the instant action, this took place when the Defendant inaccurately reported - on the public page it unilaterally created for Plaintiff without her permission or consent – that the Plaintiff has arrest or criminal records.

2. Plaintiff, Marion Osherovitz ("Osherovitz" or "Plaintiff"), brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Defendant MYLIFE.COM, INC. ("MyLife" or "Defendant") has failed to follow reasonable procedures to ensure maximum accuracy of credit reports it prepared concerning Plaintiff and those individuals who are similarly situated.

3. MyLife gathers personal information through a wide range of sources as well as original descriptors, charts, and other contents created by MyLife, and generates a "MyLife Public

Page" on individual consumers. A MyLife Public Page can list a wide variety of personal information, including an individual's age, religion, address, phone numbers, employers, education, mini biography, and **criminal record**. MyLife provides even more extensive information to paid subscribers.

4. MyLife claims to have over 325 million public Pages with information about almost every American 18 years and older.

5. As stated on their website "MyLife is the leading reputation platform. We are dedicated to helping everyone control their personal information – Background Report and Reputation Score – to help them look good, personally and professionally, to the people searching for them online." *See* **Exhibit A.**

6. Despite MyLife's practice of compiling, creating, and selling consumer reports as described above, the company publicly claims they are not a consumer reporting agency.

7. Because MyLife believes it does not have to comply with the FCRA, and unfortunately for consumers such as the Plaintiff and those similarly situated, MyLife does not do enough to ensure maximum possible accuracy of credit reports it creates about consumers.

8. As such, MyLife has been unlawfully operating and profiting as a consumer reporting agency.

9. Plaintiff seeks statutory, actual, and punitive damages, for herself and the class members, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

10. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. The Defendant regularly conducts business within the state of New Jersey, and violated Plaintiff's rights under the FCRA in the state of New Jersey as alleged more fully below.

11. Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this district, Defendant conducts business in this district, and communications giving rise to this action occurred in this district.

## PARTIES

12. Plaintiff is a resident of Monmouth County, New Jersey, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

13. Defendant MyLife is a corporate entity located in Los Angeles, California.

## FACTUAL ALLEGATIONS

14. Beginning in 2018, Plaintiff began working as a real estate agent in New Jersey.

15. Plaintiff began marketing her service through social media with the hopes of developing client relationships.

16. Shortly thereafter, Plaintiff was informed by several people that the first result on a Google search of her name results in a link from MyLife.com which informs the public that "**Marion DOES have Arrest or Criminal Records.**" *See* **Exhibit B.**

17. As Plaintiff was never arrested in her life, nor did she ever have a criminal record, Plaintiff was completely shocked and upset. She also quickly realized that the inaccurate reporting has been, and is continuing to, negatively impact her ability to obtain new clients.

18. Prior to hiring a real estate agent, inviting that real estate agent into their homes, and providing a key to their real estate agent so that the agent can show their homes to potential buyers, it is common for potential homeowners to do a quick Internet search on the agent's name.

19. As described above, due to the Defendant's negligent and reckless reporting, the first result any such potential clients would see is the Defendant's webpage reporting that "**Marion

**DOES have Arrest or Criminal Records."** *See* **Exhibit B.**

20. MyLife gathers information from third party sources that it uses to generate reports about consumers, including information about whether they have any arrests or a criminal record.

21. While some of MyLife's information stems from third party sources, MyLife exerts total control over its website, meaning, it is in total control of what appears there, and materially contributes to creating the content.

22. Unlike searches on a search engine such as Google or Bing, when MyLife returns a search result, it draws conclusions, makes predictions, and otherwise makes factual assertions about the data it returns bearing on a consumer's reputational score.

23. Due to the non-existent arrest or criminal record, Mylife assigned Plaintiff a bad 'Reputation Score' of between 1.77-2.96 (with potential scores ranging between 1 and 5).

24. To see the exact 'Reputation Score', one must pay Mylife to subscribe.

25. Despite the breadth of data and information it provides about consumers to third parties, and despite the massive impact it can have on a consumer's eligibility for credit, employment, or insurance, Mylife attempts to disclaim its obligations under the FCRA.

26. Because of that disclaimer, Mylife fails to have procedures in place to ensure maximum possible accuracy, and a significant portion of the information that it reports is wholly inaccurate.

27. Compounding the inaccuracies in its report, MyLife has failed to develop an effective system to allow consumers to remove inaccurate information from individual reports.

28. On consumeraffairs.com[1] there are hundreds of complaints about inaccurate reporting and the difficulties of getting the false reporting removed. Neither of which would be an issue

---

[1] https://www.consumeraffairs.com/online/mylife.html

if MyLife agreed to comply with the FCRA, as it is clearly obligated to do.

29. Snippets of some of the reviews are as follows:

"Take a chance and look yourself up if you want to waste your time and money. I cancelled my trial after I checked on someone that I was thinking of hiring Then I looked at my family. They didn't have names address, or anything correct. I cancelled my trial and they asked me why? I told them that I knew for a fact that much of their info was bs. They said, "Oh, well this isn't our fault. This is just record searches that we do."

"WHY aren't Mylife.com removing ALL data as requested? This will be against the California Consumer Protection Act of 2018 as being enforced in California beginning January 1st 2020. Mylife.com needs to remove ALL personal identifying information when they are asked to, especially considering that NONE of us opted in to this gross violation of privacy in the first place."

"This site is a scam to get your money, it has information about me but it is not really me and there is no way to correct their bogus information without paying 107. Dollars which I will not do to correct my own info. This site should be shut down and they should be forced to let you fix any incorrect info about yourself."

30. Indeed, this is not even the first time MyLife.com has been sued for this exact same conduct.

31. For example, in *Cap v. MyLife.com,* filed in the District of Minnesota bearing Civil Action Number 0:19-cv-02056, MyLife.com was again sued for falsely reporting that a consumer had an arrest or criminal record. The *Cap v. MyLife.com* claim similarly highlights how Defendant ignores requests to remove inaccurate information without a paid subscription.

32. In *Spivak v. MyLife.com,* filed in the Northern District of Ohio, bearing Civil Action Number 1:18-cv-02858-PAG, MyLife.com was once again sued for falsely reporting that a consumer had a criminal record.

33. Indeed, MyLife.com is just a new take on the same scheme this same company has been using for years. MyLife.com is a rebranded website that used to run under Reunion.com, and then Wink.com, and then Classmates.com. In February of 2009 it took on its latest alias after each of the previous websites were sued for similar deceptive practices.

34. MyLife's inaccurate reporting harmed Plaintiff's ability to obtain clients. It has also caused actual and/or imminent harm by creating, displaying, and marketing inaccurate consumer reporting information about Plaintiff. This harm is imminent and ongoing.

35. Additionally, Plaintiff has suffered actual harm in the form of anxiety, trouble sleeping, stress, concern, and/or worry about her diminished employment prospects.

36. As noted above, Plaintiff is not the only one harmed by MyLife's practices.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings Count I of this action as class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "FRCP"), on behalf of herself and all others similarly situated.

38. The Class (hereinafter, "Class") consists of: All natural persons residing in the United States of America on whom, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, had information relating to their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living compiled and displayed by MyLife.com, Inc.

39. The Class period begins two years prior to the filing of this Action.

40. This Action is properly maintained as a class action. The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

   a) Upon information and belief, the Class is so numerous that joinder of all members is impracticable because Defendant handles hundreds if not thousands, of consumer reports that list information relating to their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living compiled and displayed by MyLife.com, Inc.

   b) There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

      i. Whether the defendant violated various provisions of the FCRA including but not limited to 15 U.S.C. § 1681e(b).

      ii. Whether Plaintiff and the Class have been injured by the Defendants' conduct;

      iii. Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

      iv. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

   c) Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

d) Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

e) Plaintiff will fairly and adequately protect the interest of the Class and has retained competent attorneys to represent the Class.

f) A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

g) A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages. If Defendants' conduct is allowed to proceed without remedy they will continue to reap and retain the proceeds of their ill-gotten gains.

h) Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
### FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
### 15 U.S.C. § 1681e(b) AGAINST DEFENDANT
### INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

41. All preceding paragraphs are realleged.

42. At all times pertinent hereto, MyLife.com was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a.

43. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

44. Were MyLife.com to follow procedures to assure maximum possible accuracy of the credit report it prepared concerning Plaintiff, it would not be possible for it to report Plaintiff, and those similarly situated, as having an arrest or criminal record.

45. Furthermore, were MyLife.com to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report.

46. As a direct and proximate result of MyLife.com's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## DEMAND FOR TRIAL BY JURY

47. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendant as follows:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff and Class statutory damages;

C. Awarding Plaintiff and Class punitive damages;

D. Awarding Plaintiff and the Class the costs of this action and reasonable attorneys' fees and expenses;

E. Awarding pre-judgment interest and post-judgment interest;

F. A declaration that Defendant's conduct alleged herein is unlawful, as set forth more fully above;

G. Equitable relief, enjoining Defendant from engaging in the unjust and unlawful conduct alleged herein; and

H. Awarding Plaintiff and Class such other and further relief as this Court may deem just and proper.

Dated: October 7, 2019

By: /s/ Ari Marcus
Ari Marcus, Esq.
Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
(732) 298-6256 facsimile
*Attorney for Plaintiff and the putative Class*